1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9    MARY D. HASEL,                      )    No. CV 07-928-PHX-MHM
                                         )
10                Plaintiff,             )    **ORDER**
                                         )
11   v.                                  )
                                         )
12                                       )
     MICHAEL J. ASTRUE,                  )
13   Commissioner of Social Security,    )
                                         )
14                Defendant.             )
                                         )
15   _____      )

16

17        Plaintiff Mary D. Hasel ("Plaintiff") seeks judicial review of Administrative Law

18   Judge ("ALJ") Peter J. Baum's determination of the onset date of her disability.  The ALJ

19   partially granted Plaintiff's claim for Disability Insurance and Supplemental Security

20   Income benefits pursuant to §§ 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g).

21   Currently before the court are Plaintiff's motion for summary judgment pursuant to Rule

22   56(a) of the Federal Rules of Civil Procedure ("FRCP") (Dkt. #13) and Defendant

23   Michael J. Astrue's ("Defendant") cross-motion for summary judgment pursuant to FRCP

24   56(b) (Dkt. #15).

25   **I.    PROCEDURAL HISTORY**

26        Plaintiff filed applications for Disability Insurance and Supplemental Security

27   Income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-

28   433, 1381-1383f, on January 25, 2002.  (Administrative Record ("AR") 47-49, 145-47).

Plaintiff's application was denied initially and on reconsideration.  (AR 51, 52, 59-65).

On June 16, 2003, a hearing was held before ALJ Baum.  (AR 993-1017).  The ALJ

denied Plaintiff's application for disability on August 26, 2003.  (AR 69-74).  Plaintiff

then administratively appealed the decision, and the Appeals Council vacated the decision

and remanded the case for further proceedings.  (AR 127-128).  The Appeals Council

required the ALJ, *inter alia,* to specifically address the applicable Musculoskeletal

Listings,[1] and if necessary, develop the record from the treating source to determine if

Plaintiff is able to "ambulate effectively"; also to further evaluate Plaintiff's subjective

complaints and lay statements of record.  (AR 128).

Following remand, the ALJ held two supplemental hearings, the first on November

12, 2005, and the second on November 30, 2005.  (AR 1018-1032, 1033-1040).  On

January 23, 2006, the ALJ issued a partially favorable decision, determining that Plaintiff

was disabled as of June 6, 2004, but not prior to that date.  (AR 21-28).  The Appeals

Council denied Plaintiff's request for review of the ALJ's decision (AR 9-12), and on

May 5, 2007, Plaintiff initiated the instant action for judicial review pursuant to 42 U.S.C.

§§ 405(g), 1383(c).

## II.     BACKGROUND

### A.     Plaintiff's Medical History

#### 1.     Physical Health

Plaintiff is 5 feet 4 inches tall and her weight ranged from 262-285 pounds

between November 2000 and July 2004.  (AR 354, 602).  In March 2000, Plaintiff

reported that she was having difficulty walking normally and that there was tenderness in

her knee joint.  (AR 424).  Knee strain was diagnosed and she was advised to elevate her

---

[1] The musculoskeletal listings, effective February 19, 2002, are promulgated by the Social Security Administration.  The listings provide for an analysis of loss of function by the claimant in determining whether the listings are met for disorders and/or impairments of the musculoskeletal system (i.e., whether the claimant is disabled).  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007).

1    leg.  (AR 424).  Chronic right knee pain was later noted and Plaintiff was prescribed
2    Darvocet for the pain.  (AR 421, 422).

3         Thomas L. Erickson, M.D., has been Plaintiff's treating orthopedic surgeon since
4    July 2000.  (AR 552-91).  On July 25, 2000, Dr. Erickson reviewed a July 3, 2000 MRI of
5    Plaintiff's knee that showed a horizontal tear of the medial meniscus and significant
6    degeneration of the medial compartment.  (AR 552-91).  After physically examining
7    Plaintiff, he noted that Plaintiff is significantly overweight and that there was no
8    deformity of her knee (AR 552-91); he also advised Plaintiff that it was imperative that
9    she lose weight.  (AR 293).  Additionally, Dr. Erickson noted that Plaintiff suffered from
10   swelling, tenderness, pain on flexion and limited range of motion.  (AR 552-91).  In
11   December 2000, Dr. Erickson recommended an unloader brace, as Plaintiff was not an
12   optimal candidate for arthroplasty due to her age and weight (AR 293); he also noted that
13   it appeared that Plaintiff had not lost a significant amount of weight.  (AR 293).  On April
14   12, 2001, Dr. Erickson noted that Plaintiff had not been using the brace.  (AR 292).

15        In July 2001, Plaintiff reported "having some increasing pain" and that walking
16   and weight-bearing increased her pain.  (AR 291).  Dr. Erickson ordered synvisc
17   injections to help manage the pain.  (AR 291.).  The injections continued through April
18   2002 (AR 287) when Dr. Erickson performed knee surgery for a torn meniscus.  (AR
19   299-300).  Post-operative diagnosis was osteoarthritis of the right knee with medial
20   synovial plica and degenerative tear of the medial meniscus.  (AR 299).  Post-surgery,
21   Plaintiff was described as doing well (AR 566, 567) with good stability in her knee.  (AR
22   563).

23        On June 10, 2003, Dr. Erickson reported that Plaintiff had severe osteoarthritis of
24   the right knee with a complete loss of cartilage and bilateral tarsal tunnel syndrome.  (AR
25   496).  He opined that Plaintiff could not be on her feet for more than five minutes per
26   hour, could not walk more than 100 feet at a time once an hour, and could not climb more
27   than one flight of stairs per shift.  (AR 496).  In an August 6, 2004 letter, Dr. Erickson
28   reported that Plaintiff injured her knee in a fall approximately two months earlier.  (AR

1   555).  Plaintiff noted that she had severe pain with ambulation since the fall and an MRI
2   scan revealed a torn knee ligament.  (AR 554; <u>see</u> AR 550; 555).
3          In a May 8, 2002 report, non-examining State agency physician Frank
4   Shallenberger, M.D., opined that Plaintiff could perform lifting and carrying requirements
5   for light work (as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) (2007)).  (AR 276).
6   However, Plaintiff could not stand or walk for more than about two hours in a work day
7   and was limited in her ability to push or pull with her legs.  (AR 276).  Dr. Shallenberger
8   also stated that Plaintiff should avoid concentrated exposure to vibration and should avoid
9   even moderate exposure to fumes/odors/dusts/gases/poor ventilation and other hazards.
10  (AR 279).  Dr. Shallenberger noted that Plaintiff was obese and had osteoarthritis of both
11  knees.  (AR 282).
12         In October 2003, Dr. Erickson referred Plaintiff to Podiatrist Peter Myskiw,
13  D.P.M.  Dr. Myskiw performed tarsal tunnel release surgery on Plaintiff May 20, 2004.
14  (AR 535; <u>see</u> AR 619-620).  Post surgery, he reported that Plaintiff was doing "good" and
15  "very well."  (AR 534).  However, on October 26, 2004, Dr. Myskiw stated that Plaintiff
16  was receiving care for multiple problems that affected her lower extremities, including
17  "entrapment nueropathies and rheumatoid arthritis."  (AR 532).  He further stated that
18  "these conditions are limiting her weight-bearing activities since they result in increased
19  pain."  (AR 532).
20         Habib Khan, M.D. evaluated Plaintiff initially on March 2, 2004, and again on
21  June 14, 2004, for her complaints of right knee and ankle pain.  (AR 604, 606-608).  Dr.
22  Khan diagnosed Plaintiff with tibial neuropathy with possible tarsal tunnel syndrome,
23  peripheral neuropathy, carpal tunnel syndrome, bilateral knee joint problems, rheumatoid
24  arthritis with multiple joint arthritis, borderline diabetes and migraine headaches.  (AR
25  604, 608).
26         In a June 16, 2003 letter, Lisa Cortez, Plaintiff's sister, stated that Plaintiff had
27  several health problems that were worsening, that Plaintiff was "very much in pain," that
28  Plaintiff could not stand for long periods, and that she could not sit "unless her feet [we]re

propped up with a pillow." (AR 236). Additionally, in a June 16, 2003 letter, Yvonne Mattingly, Plaintiff's resident care provider, stated that Plaintiff could not lift her son because she could not stand "for any length of time." (AR 237). She also stated that Plaintiff could stand for "five minutes at a time" and could not walk from a store parking lot to the store without "assistance" and occasional stops to rest. (AR 237). Finally, the resident care provider stated that she did the laundry, grocery shopping, all errands, school business for two of the children, and takes the children to doctor's appointments because Plaintiff was unable to do so. (AR 237).

### 2.    Mental Health

Plaintiff suffers from depression and anxiety disorders. (AR 407, 410). On August 23, 2000, Plaintiff underwent a psychological evaluation with David R. Young, Ed.D. (AR 408-11). Plaintiff reported poor sleep at night, fatigue and difficulty concentrating; she "feels worthless, helpless, and hopeless." (AR 409). Following the examination, Plaintiff was diagnosed with severe, recurrent depression without psychotic features and panic disorder without agoraphobia. (AR 408-11). Dr. Young stated "[a]t the present, she is a rather seriously impaired individual who is not able to function at the present time." (AR 410).

In October 2004, Plaintiff was diagnosed with major depression and generalized anxiety disorder. (AR 822-25). Then in November 2004, Plaintiff completed a Mental Impairment report, notably depression, anxiety, poor concentration, agitation and feelings of helplessness; these symptoms were alleged to be present for the past 5 years. (AR 543-48). Joan McGillicuddy, Ph.D., opined in November 2004 that Plaintiff suffered from major depression and has been "depressed, anxious, unable to sleep and with low energy." (AR 831). Further, she stated that Plaintiff has difficulty concentrating and problem solving. (AR 831). Lastly, Dr. McGillicuddy felt that Plaintiff's conditions were incapacitating; she needs medication and "one to one counseling to assist her with daily activities of living. Even with these services, her capacity to cope is severely impaired." (AR 831)

1     Plaintiff points to continuing anxiety and depression issues experienced after June

2   6, 2004, including worsening symptoms of depression.  However, the Court need not

3   consider changes in Plaintiff's mental condition after the disability date determined by the

4   ALJ since it is undisputed that Plaintiff has been, and continues to be, disabled since June

5   6, 2004.  (Defendant's Statement of Facts ¶ 4).

6          **B.     Hearing Testimony**

7          At the June 16, 2003 hearing, the ALJ questioned Plaintiff about her inconsistent

8   statements regarding her education level (AR 998-99) and her alleged disability date.

9   (AR 999-1000).  Plaintiff explained that the inconsistencies are a result of her "difficult

10  life," and that she was "really bad with dates."  (AR 1000).  Plaintiff testified that she had

11  stopped working because her anxiety and knee pain impaired her ability to concentrate.

12  (AR 1001, 1002).  She also stated that she has a resident care provider for her children,

13  but that she can care for the children if they are on the bed with her.  (AR 1002, 1008).

14  Plaintiff further testified that she could drive short distances and that she sporadically

15  took pain medication.  (AR 1003-04).  Plaintiff rated the pain in her right knee at a level

16  10 out of 10.  (AR 1006).  She testified that she cannot walk one block without knee pain.

17  (AR 1006).  She also stated that she spends most of her time in bed, rotating her legs up

18  and down; the resident care provider or the children do the cooking.  (AR 1008).

19         Vocational expert Kathleen McAlpin also testified at the June 16, 2003 hearing.

20  (AR 1010-16).  The ALJ asked Ms. McAlpin (AR 1014-15) to consider an individual

21  with Plaintiff's vocational profile, who was limited to sedentary work with functional

22  limitations, as assessed by Dr. Erickson (AR 496), and environmental limitations, as

23  assessed by Dr. Shallenberger (AR 279).  Ms. McAlpin testified that various jobs existed,

24  in both the national and local economy, that could be fulfilled by an individual with the

25  stated limitations and vocational profile.  (AR 1015-16).  For example, the individual

26  could work as a telephone solicitor (572,000 jobs nationally, 19,000 in Arizona), as a

27  small product assembler (324,000 jobs nationally, 17,416 in Arizona), and as a

28  surveillance systems monitor (10,656 jobs nationally, 182 in Arizona).  (AR 1015-16).

1   However, as discussed below, the hypothetical presented did not include Plaintiff's

2   mental impairment limitations.

3       At the second hearing, on November 12, 2004, Plaintiff testified that she was

4   allergic to her anxiety and depression medication, but that she continued to take

5   medication for her pain. (AR 1018-32). Plaintiff stated that she suffers from panic

6   attacks almost every night, that she can only walk short distances without rest, and that

7   even walking short distances causes her pain at a level 10 out of 10. (AR 1024-26).

8   Plaintiff stated that her ability to walk has gotten worse since she fell in May 2004 and

9   ripped her meniscus. (AR 1027). She said that she can not walk on uneven ground, and

10  has been unable to do so for four years. (AR 1026-27). She described her knee cap as

11  occasionally popping out of place, resulting in a lot of pain. (AR 1026-28). Plaintiff

12  weighed 282 pounds at the time of the hearing; she stated that she had gained weight due

13  to an inability to exercise. (AR 1029). At a third hearing on November 30, 2005,

14  Plaintiff stated that she uses a walker at all times. (AR 1038).

15      **C.    ALJ's Conclusion**

16      On January 23, 2006, ALJ Baum granted Plaintiff's claim for Disability Insurance

17  and Supplemental Security Income benefits, following the requisite five-step sequential

18  evaluation for determining whether an applicant is disabled under the Social Security Act.

19  See 20 C.F.R. §§ 404.1520 and 416.920. (AR 21-28). At issue here is the ALJ's

20  determination that Plaintiff's date of disability was June 6, 2004, instead of June 15, 2001

21  as alleged by Plaintiff. (AR 21-28).

22      At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

23  activity since June 15, 2001. (AR 22). At step two, the ALJ stated that the objective

24  evidence indicated that Plaintiff has bilateral knee pain, a history of cardiomegaly, is

25  obese, and suffers from depression and generalized anxiety disorder. (AR 22). The ALJ

26  determined that these impairments were severe at all times since the alleged onset date.

27  (AR 23).   The ALJ also determined that Plaintiff showed "a slight restriction of

28  activities of daily living, moderate difficulties in maintaining social functioning, and

moderate difficulties in maintaining concentration, persistence, and pace." (AR 23). Although the ALJ determined Plaintiff to have slight to moderate mental functional limitations, the ALJ did not classify Plaintiff's mental impairments as severe or marked.

At step three, the ALJ determined that Plaintiff's impairments, while severe, did not meet or equal, either singularly or in combination, the "inability to ambulate effectively" requirement of the Listings of Impairments ("Listings") until June 6, 2004. See 20 C.F.R., Part 404, Subpart P, Appendix 1; (AR 23, 25). The ALJ concluded that Plaintiff's impairments met the "inability to ambulate effectively" requirement of the Listings only after Plaintiff re-injured her knee. (AR 26). The ALJ relied on Dr. Erickson's August 6, 2004 letter indicating that Plaintiff had injured her knee in a fall approximately two months earlier (i.e., June 6, 2004). (AR 26).

The ALJ, "considering the entire record, including the claimant's allegations of disabling symptoms and limitations," concluded that the Plaintiff retained a residual functioning capacity, before June 6, 2004, "to perform the exertional demands of sedentary work, or work which is generally performed while sitting and does not require lifting in excess of ten pounds." (AR 23). The ALJ further stated that Plaintiff was "limited to sedentary exertion work that did not require being on her feet more than approximately 5 minutes out of each hour, walking more than approximately 100 feet at a time more than once an hour, climbing more than one flight of stairs per shift, or concentrated exposure to extreme cold, humidity, fumes, odors, dusts, gases, poor ventilation, machinery, and heights. She was capable of performing routine simple work on a sustained basis." (AR 23).

In making this determination, the ALJ gave "controlling weight" to the assessment of Plaintiff's treating physician, Dr. Erickson. (AR 24). The ALJ stated that "[t]he doctor provided the only treating source residual functional capacity assessment. His assessment of June 10, 2003 is supported by objective findings and is not inconsistent with the other substantial evidence." (AR 24). Additionally, in light of Plaintiff's history of cardiomegaly, osteoarthritis and obesity, the ALJ considered the environmental

1   limitations, as discussed by Dr. Shallenberger, to determine Plaintiff's residual functional

2   capacity.  (AR 24).  However, the ALJ rejected Dr. McGillicuddy's assessment that

3   Plaintiff's depression and anxiety disorders were "incapacitating."  (AR 26).  The ALJ

4   stated that Plaintiff's "mental condition allegedly incapacitating per treating physician

5   [Dr. McGillicuddy] is not corroborated by the commensurate GAF[2] scores until January

6   21, 2005."  (AR 26) (internal citations and quotations omitted).

7       In addition, the ALJ rejected Plaintiff's "allegations that she was incapable of all

8   work activity."  (AR 25).  The ALJ stated that while Plaintiff testified that she could not

9   walk on uneven ground for the last 4 years and could only walk 20-25 feet without

10  stopping, her allegations were not supported by the objective medical evidence.  (AR 25).

11  He also rejected the testimony of the Plaintiff's sister as "inconsistent information

12  regarding [Plaintiff's] impairment."  (AR 25).  Although Plaintiff's sister stated that the

13  Plaintiff "could not sit unless her feet were propped up with a pillow," the ALJ concluded

14  that that statement was "not corroborated by the [Plaintiff's] testimony or the medical

15  evidence of record."  (AR 25).  Further, the ALJ concluded that the statements of

16  Plaintiff's resident care provider, that Plaintiff could not stand for more than five minutes

17  or walk from a store parking lot to the store without assistance, were consistent with the

18  findings of Dr. Erickson.  (AR 25).

19      At step four, the ALJ concluded that Plaintiff was unable to perform her past

20  relevant work, since it required the performance of work outside her residual functional

21  capacity.  (AR 25).  At step five, based on his findings regarding Plaintiff's residual

22

23  ─────────────

24      [2] A GAF or Global Assessment of Functioning is a numerical scale (0 through 100)
    used by mental health clinicians and doctors to rate the social, occupational, and

25  psychological functioning of adults.  American Psychiatric Association, Diagnostics and
    Statistical Manual of Mental Impairments, 4th text. rev., 2000, p.32 (DSM-IV-TR).  A GAF

26  score of 51-60 is indicative of moderate symptoms, such as flat affect or occasional panic
    attacks, or any moderate difficulty in social, occupational, or school functioning.  A GAF

27  score of 41-50 is indicative of serious symptoms, and a GAF score of 61-70 is indicative of

28  mild symptoms.

1  functional capacity and the vocational expert's testimony, the ALJ concluded that there
2  were "a significant number of jobs available that [Plaintiff] could perform in Arizona and
3  the national economy."  (AR 26).

4  **III.    STANDARD OF REVIEW**

5          The Court must affirm an ALJ's findings of fact if they are supported by
6  substantial evidence and free from reversible legal error.  See 42 U.S.C. 405(g); see also
7  Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more
8  than a mere scintilla," but less than a preponderance, i.e., "such relevant evidence as a
9  reasonable mind might accept as adequate to support a conclusion."  See, e.g., Richardson
10 v. Perales, 402 U.S. 389, 401 (1971); Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
11 (9th Cir. 1975); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

12         In determining whether substantial evidence supports a decision, the record as a
13 whole must be considered, weighing both the evidence that supports and the evidence that
14 detracts from the ALJ's conclusion.  See Richardson, 402 U.S. at 401; see also Tylitzki v.
15 Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  "It is for the ALJ, not the courts, to resolve
16 ambiguities and conflicts in the medical testimony and evidence."  Andrews v. Shalala,
17 53 F.3d 1035, 1039 (9th Cir. 1995) (citations and quotations omitted).  The ALJ may draw
18 inferences logically flowing from the evidence, and "[w]here evidence is susceptible to
19 more than one rational interpretation, it is the ALJ's conclusion which must be upheld."
20 Id. (citation omitted).  "If the evidence can support either affirming or reversing the ALJ's
21 conclusion, [then the Court] may not substitute [its] judgment for that of the ALJ."
22 Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

23         In order to qualify for disability insurance benefits, a plaintiff must establish that
24 he is unable to engage in substantial gainful activity due to a medically determinable
25 physical or mental impairment that has lasted or can be expected to last for a continuous
26 period of not less than 12 months.  See 42 U.S.C. § 1382c (a)(3)(A).  A plaintiff must
27 show that he has a physical or mental impairment of such severity that he is not only
28 unable to do her previous work, but cannot, considering his age, education, and work

1  experience, engage in any other kind of substantial gainful work which exists in the

2  national economy.  Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).  To

3  determine whether an applicant is eligible for disability benefits, the ALJ must conduct

4  the following five-step sequential analysis:

5       (1)    determine whether the applicant is currently employed in substantial
            gainful activity;

6       (2)    determine whether the applicant has a medically severe impairment
            or combination of impairments;

7       (3)    determine whether the applicant's impairment equals one of a
            number of listed impairments that the Commissioner acknowledges

8              as so severe as to preclude the applicant from engaging in substantial
            gainful activity;

9       (4)    if the applicant's impairment does not equal one of the listed
            impairments, determine whether the applicant is capable of

10             performing his or her past relevant work;

     (5)    if not, determine whether the applicant is able to perform other work

11             that exists in substantial numbers in the national economy.

12 20 CFR §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

13 **IV.**    **DISCUSSION**

14       Plaintiff contends that the ALJ erred in his determination of Plaintiff's onset date

15 of disability.  Plaintiff argues that the ALJ (1) erred by not properly considering

16 Plaintiff's functional limitations caused by her mental impairments; (2) erred by failing to

17 properly consider Plaintiff's obesity; (3) erred in assessing the credibility of third-party

18 statements as to the severity of Plaintiff's pain and symptoms**;** (4) erred in concluding that

19 Plaintiff's impairments did not meet or equal the requirements of the Listings prior to

20 June 6, 2004; (5) erred in assessing Plaintiff's credibility as to the severity of her pain and

21 symptoms.  It is undisputed that the ALJ's determination that Plaintiff was disabled as of

22 June 6, 2004 was supported by substantial evidence.  However, the question that the

23 Court must decide is whether the ALJ's determination that Plaintiff was not disabled prior

24 to June 6, 2004 was supported by substantial evidence.

25      **A.**    **The ALJ's Consideration of Plaintiff's Mental Impairments**

26       Plaintiff asserts that ALJ Baum did not properly consider Dr. Young's testimony,

27 and did not provide proper reasoning for rejecting Dr. McGillicuddy's testimony, when

28 he determined the onset date of disability.  The Court disagrees.  The ALJ may disregard

1    a treating physician's opinion when his or her opinion is not supported by the medical

2    record or there is conflicting medical evidence.  See, e.g., Flaten v. Sec'y of Health &

3    Human Servs., 44 F.3d 1453, 1463-1464 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d

4    747, 751 (9th Cir. 1989) ("A lack of supporting clinical findings is a valid reason for

5    rejecting a treating physician's opinion.").  But, "vague, broad, or generalized reasons are

6    insufficient grounds for the ALJ to reject a treating physician's opinion."  McAllister v.

7    Sullivan, 888 F. 2d 599, 602 (9th Cir. 1989).  In rejecting a treating physician's opinion,

8    the ALJ must provide "specific and legitimate reasons" supported by substantial evidence

9    in the record.  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

10        In reviewing the record, the Court finds that the ALJ properly rejected the opinions

11   of Drs. Young and McGillicuddy that Plaintiff's mental impairments were incapacitating.

12   While the ALJ did not specifically address Dr. Young's testimony, he did address Dr.

13   McGillicuddy's testimony (AR 26); Plaintiff concedes that the doctors' testimony is

14   substantively similar.  (Plaintiff's Statement of Facts ¶ 34).  The ALJ need not resolve

15   every ambiguity in the record, but his determinations must be made on the record as a

16   whole.  In rejecting Dr. McGillicuddy's testimony, the ALJ noted that her findings were

17   "not corroborated by the commensurate GAF scores until January 21, 2005."  (AR 26).

18   Plaintiff exhibited symptoms indicative of GAF scores ranging from 55-60, indicating

19   moderate symptoms, until January 12, 2005.  (AR 815-860).  However, as of January 21,

20   2005, she exhibited symptoms indicative of GAF scores ranging from 45-55, indicating

21   moderate to severe impairments.  (AR 815-860).  Accordingly, the court finds that the

22   ALJ properly rejected the opinions of Drs. Young and McGillicuddy based upon

23   substantial evidence.

24        Additionally, Plaintiff argues that the ALJ did not properly consider Plaintiff's

25   mental impairments when concluding that her functional limitations were not severe at

26   step 2 of the sequential evaluation process.  When assessing functional limitations caused

27   by mental impairments, the Listings use four criteria to assess the severity of those

28   limitations: (a) activities of daily living; (b) social functioning; (c) concentration,

1   persistence, or pace; and (d) episodes of decompensation.  See 20 C.F.R. Pt. 404, Subpt.

2   P, App. 1 (2007).  The ALJ noted that Plaintiff "showed a slight restriction of activities of

3   daily living, moderate difficulties in maintaining social functioning, and moderate

4   difficulties in maintaining concentration, persistence, and pace." (AR 23).  Plaintiff

5   points to the fact that the ALJ did not note any episodes of decompensation.  However,

6   Plaintiff fails to point to any medical evidence in the record indicating that she actually

7   suffered episodes of decompensation.  Thus, the ALJ's failure to mention that Plaintiff

8   did not suffer any episodes of decompensation is not fatal to his finding that Plaintiff's

9   mental impairments did not constitute a severe functional limitation.

10   **B.     The ALJ's Consideration of Plaintiff's Obesity**.

11         Plaintiff argues that ALJ Baum erred by failing to consider the effect that

12   Plaintiff's obesity has on her functional limitations.  Again the Court notes that the ALJ is

13   responsible for resolving ambiguities and conflicts in the medical testimony.  Magallanes,

14   881 F.2d at 750.

15          In reviewing the record, the Court finds that the ALJ properly considered

16   Plaintiff's obesity when determining her impairments and functional limitations.  The

17   ALJ noted that Plaintiff was obese and that her obesity was a severe impairment at all

18   times since the alleged onset date of June 15, 2001.  (AR 22, 23).  However, when the

19   ALJ determined Plaintiff's residual functional capacity, he concluded that Plaintiff

20   nonetheless was able to perform sedentary work before she became disabled.  (AR 23).

21   He gave controlling weight to the opinion of Dr. Erickson, who noted that Plaintiff was

22   obese and needed to lose weight.  (AR 24). Additionally, the ALJ noted the conclusions

23   of Dr. Shallenberger regarding Plaintiff's functional limitations, which took into account

24   Plaintiff's obesity.  (AR 23).  It is clear from the record that both doctors considered

25   Plaintiff's obesity when determining her functional limitations.  The ALJ adopted these

26   findings.  Therefore, it cannot be said that the ALJ did not consider Plaintiff's obesity

27   when he made his determination concerning her residual functional capacity.  Thus, the

28

1   Court finds that the ALJ's finding regarding the effect of Plaintiff's obesity on her

2   functional limitations was supported by substantial evidence and free from legal error.

3          **C.     Assessment of Third-Party Statements**.

4          Plaintiff argues that the ALJ erred in rejecting the third-party statements of Lisa

5   Cortez, Plaintiff's sister, regarding Plaintiff's functional limitations.  An ALJ "may also

6   use evidence from other sources," such as third-parties, to assess the severity of a

7   claimant's impairments and how they affect a claimant's ability to work.  20 C.F.R. §§

8   404.1513(d), 416.913(d) (2007).  The oral testimony or written statements of lay

9   witnesses cannot be discounted by an ALJ unless he provides reasons that are germane to

10  each witness.  Robbins v. Social Security Admin,, 466 F.3d 880, 885 (9th Cir. 2006).  A

11  finding by the ALJ that lay testimony is in conflict with the medical evidence is a

12  germane reason for discounting the testimony.  Lewis v. Apfel, 236 F.3d 503, 511 (9th

13  Cir. 2001).

14         After reviewing the record, the Court finds that the ALJ has not met his burden in

15  rejecting the testimony of Lisa Cortez.  The ALJ merely stated that Ms. Cortez's

16  statements were inconsistent with Plaintiff's testimony and the objective medical

17  evidence.  (AR 25).  However, the ALJ pointed to nothing in the record to support that

18  contention; it is not enough for the ALJ to make findings without citing to the record or

19  explaining his conclusions.  Although contradictory medical evidence is sufficient to

20  discount third-party testimony, the ALJ nonetheless has a duty to explain exactly what

21  evidence the ALJ relies on as contradictory.  Here, the ALJ does not do so; the Court

22  therefore cannot accept the ALJ's rejection of Lisa Cortez's testimony.

23         **D.     The ALJ's Conclusion that Plaintiff's Impairments Did Not Meet or
                    Equal the Requirements of the Listings prior to June 6, 2004.**

24
           Plaintiff argues that she was presumptively disabled under Listing 1.02A prior to
25
    June 6, 2004.  It is Plaintiff's burden to establish presumptive disability under the
26
    Listings.  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002).  Mere diagnosis of a
27
    listed impairment is insufficient; "a claimant may have a listed impairment without being
28

1    presumptively disabled if the claimant's impairment is not as severe as required under the

2    findings for that impairment . . . ." Id.; see 20 C.F.R. §§ 404.1525(d), 416.925(d) (2007).

3    Listing 1.02A describes a major dysfunction of a joint, such as a knee:

4         1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by
          gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous
5         ankylosis, instability) and chronic joint pain and stiffness with signs of
          limitation of motion or other abnormal motion of the affected joint(s), and
6         findings on appropriate medically acceptable imaging of joint space
          narrowing, bony destruction, or ankylosis of the affected joint(s).  With :
7
          A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee,
8         or ankle), resulting in inability to ambulate effectively, as defined in
          1.00B2b.
9
10   20 C.F.R. Pt. 4, Subpt. P, App. 1, Listing 1.02A.  Listing 1.00B2b states:

11        Inability to ambulate effectively means an extreme limitation of the ability
          to walk; i.e., an impairment(s) that interferes very seriously with the
12        individual's ability to independently initiate, sustain, or complete activities.
          Ineffective ambulation is defined generally as having insufficient lower
13        extremity functioning. . . to permit independent ambulation without the use
          of a hand-held assistive device(s) that limits the functioning of both upper
14        extremities.

15        . . . .

16        [E]xamples of ineffective ambulation include, but are not limited to, the
          inability to walk without the use of a walker, two crutches or two canes, the
17        inability to walk a block at a reasonable pace on rough or uneven surfaces,
          the inability to use standard public transportation, the inability to carry out
18        routine ambulatory activities, such as shopping and banking, and the
          inability to climb a few steps at a reasonable pace with the use of a single
19        hand rail.

20   20 C.F.R. Pt. 4, Subpt. P, App. 1, Listing 1.00B2b.

21        In the instant case, the ALJ concluded that "[Plaintiff] did not meet the inability to

22   ambulate effectively as stated in Listing 1.02A prior to June 6, 2004."  (AR 25).

23   However, the ALJ did not actually discuss how he came to his conclusion.  Defendant

24   points to the findings of Drs. Erickson and Shallenberger, along with the ALJ's rejection

25   of Plaintiff's testimony regarding her symptoms and pain, as substantial evidence that

26   indicates that Plaintiff was able to ambulate effectively.  However, the ALJ did not make

27   any findings regarding his conclusion; post hoc rationalizations of agency decisions are

28   impermissible.  Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985).

1   As such, the Court finds that the ALJ's lack of discussion regarding evidence concerning
2   effective ambulation is insufficient and cannot support finding that his conclusion was
3   based on substantial evidence.

4           **E.      Rejection of Plaintiff's Credibility.**

5           Plaintiff contends that ALJ Baum committed reversible error in rejecting her
6   testimony regarding the severity of her symptoms, such as her pain level, and its impact
7   on her functional abilities.  However, "[a]n ALJ is not required to believe every allegation
8   of disabling pain or other non-exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635
9   (9th Cir. 2007) (citations omitted).  Nonetheless, "if there is medical evidence establishing
10  an objective basis for some degree of pain and related symptoms, and no evidence
11  affirmatively suggesting that the plaintiff was malingering, the [ALJ]'s reason for
12  rejecting the [plaintiff's] testimony must be clear and convincing and supported by
13  specific findings."  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  General findings
14  are insufficient, rather the ALJ must identify what evidence is not credible and what
15  evidence undermines the claimant's complaints.  Id.  Here, there is no issue with
16  Plaintiff's underlying impairments or lack of evidence of Plaintiff's symptoms or pain.
17  The issue is merely whether the ALJ provided the requisite reasons supported by the
18  record to reject Plaintiff's credibility.

19          In reviewing the record, the Court finds that the ALJ did not properly consider
20  Plaintiff's testimony regarding the severity of her symptoms and pain.  The ALJ did not
21  provide clear and convincing reasons, supported by specific findings, to justify his
22  adverse credibility determination.  See Social Security Ruling 96-7 (stating that adverse
23  credibility determinations must be sufficiently specific to make clear to any subsequent
24  reviewers the weight the adjudicator gave to the individual's statements and the reasons
25  for that weight).[3]  The ALJ merely stated that despite Plaintiff's allegations that she could

26

27          _____

28          [3]Social Security Rulings constitute the Social Security Administration's interpretations
    of the statute it administers and of its own regulations.  Chavez v. Dep't of Health & Human

1   not walk on uneven ground for the last four years and could only walk 20-25 feet without

2   stopping, the medical record indicated otherwise.  (AR 25).  The ALJ did not point to

3   anything in the record to support that conclusion.  While lack of medical evidence

4   supporting the degree of severity of symptoms and pain is a factor to be considered, the

5   ALJ may not reject subjective complaints based solely on a lack of objective medical

6   evidence.  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).  The ALJ does not

7   discuss any other factors that he considered in rejecting Plaintiff's testimony.  Defendant

8   offers several post hoc rationalizations for the ALJ's credibility determination, but as

9   previously stated, post hoc rationalizations of agency decisions are impermissible.[4]  Vista

10  Hill Foundation, Inc. v. Heckler, 767 F.2d at 559.  Thus, in reviewing the bases (or lack

11  thereof) for the ALJ's determination, the Court finds that the ALJ's credibility analysis

12  was not supported by specific findings; the ALJ committed reversible legal error by

13  rejecting Plaintiff's subjective complaints regarding the severity of her symptoms and

14  pain.

15          Plaintiff contends that the Court should remand this case for benefits.  The Court

16  agrees.  Remand for benefits is appropriate "where the record has been developed fully

17  and further administrative proceedings would serve no useful purpose."  Benecke v.

18  Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Specifically,

19          [T]he district court should credit evidence that was rejected during the
        administrative process and remand for an immediate award of benefits if (1)

20

21  Servs., 103 F.3d 849, 851(9th Cir. 1996); Quang Van Han v. Bowen, 882 F.2d 1453, 1457
    (9th Cir. 1989).  Although Social Security Rulings do not have the force of law, Chavez, 103

22  F.3d at 851, once published, they are binding upon ALJs and the Commissioner.  Holohan

23  v. Massanari, 246 F.3d 1195, 1202-03 n. 1 (9th Cir. 2001); Gatliff v. Comm'r of Soc. Sec.
    Admin., 172 F.3d 690, 692 n. 2 (9th Cir. 1999).

24

25          [4] Defendant's reliance on Warre v. Comm'r of the Soc. Admin., 439 F.3d 1001,
    1005 n.3 (9th Cir. 2006) (stating that it is not a post hoc justification to point out additional

26  support for the ALJ's position) is misplaced.  The additional support relied on in Warre was
    evidence that had been referenced by a physician, whose testimony, in turn, was relied on by

27  the ALJ.  Here, on the other hand, there is nothing in the record to indicate that the ALJ

28  relied on anything in rejecting Plaintiff's credibility.

- 17 -

the ALJ failed to provide legally sufficient reasons for rejecting the
evidence; (2) there are no outstanding issues that must be resolved before a
determination of disability can be made; and (3) it is clear from the record
that the ALJ would be required to find the claimant disabled were such
evidence credited.

Id. After reviewing the record, the Court finds that the ALJ would be required to find

Plaintiff disabled as of the alleged onset date, June 15, 2001, if Plaintiff's testimony was

credited as true. While it is appears that Plaintiff made some inconsistent statements

regarding her functional limitations, Plaintiff consistently maintained that she has been

unable to walk on uneven ground since June 15, 2001. (AR 1026-1027). This is a

specific example of an inability to ambulate effectively, which is sufficient to establish

that she was presumptively disabled as of the alleged onset date. See 20 C.F.R. Pt. 4,

Subpt. P, App. 1, Listing 1.00B2b. Thus, the ALJ would be required to find that Plaintiff

has been presumptively disabled under Listing 1.02A since her alleged onset date of June

15, 2001. Remand for the calculation of benefits is appropriate.

**V.    SUMMARY**

The Court finds that the ALJ improperly concluded that Plaintiff was able to

ambulate effectively prior to June 6, 2004. The ALJ failed to make specific findings

regarding his disability onset date; his findings were not based on substantial evidence.

In addition, the ALJ improperly rejected both Plaintiff's testimony and third-party

statements by Lisa Cortez regarding the severity of Plaintiff's symptoms and pain. As

such, the Court will credit Plaintiff's testimony regarding the severity of her symptoms

and pain as true. In doing so, the Court finds that the ALJ would be required to find that

Plaintiff was disabled as of the alleged onset date of her disability.

**Accordingly,**

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is

GRANTED. (Dkt. #13).

**IT IS FURTHER ORDERED** that Defendant's cross-motion for summary

judgment is DENIED. (Dkt #15).

1      **IT IS FURTHER ORDERED** that the matter be remanded for a calculation of

2  benefits.

3      **IT IS FURTHER ORDERED** directing the Clerk of the Court enter judgment

4  accordingly.

5      DATED this 29th day of September, 2008.

6

7

8

9                                     Mary H. Murguia
                                      United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28